## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**DOUGLAS SCHROEDER,**
**individually and on behalf**
**of all others similarly situated,**

     **Plaintiff,**

**v.**                            **CASE NO.:**

**AIRGAS USA, LLC,**

     **Defendant.**
_____/

### CLASS ACTION COMPLAINT

Plaintiff, Douglas Schroeder ("Plaintiff"), individually and on behalf of all others similarly situated, hereby files this Class Action Complaint alleging Defendant Airgas USA LLC, ("Airgas" or "Defendant") violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), by failing to provide him and the putative class members with a COBRA notice that complies with the law.

1.     Despite having access to the Department of Labor's Model COBRA form, Airgas chose not to use the model form— presumably to save Airgas money by pushing terminated employees away from electing COBRA.[1]

---

[1] In fact, according to one Congressional research service study, "...[The] average claim costs for COBRA beneficiaries exceeded the average claim for an active employee by 53%. The average annual health insurance cost per active employee was $7,190, and the COBRA cost was $10,988.14. The Spencer & Associates analysts contend that this

2.      COBRA is a remedial statute that should be interpreted in favor of the employee.   Indeed, the legislative history shows that Congress enacted COBRA in 1986 as a result of the reports of the growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay.  The purpose behind its notice requirements is to facilitate and assist individuals in electing continuation coverage should they so choose, not discourage them from doing so as Defendant's does.

3.      Put another way, instead of utilizing the DOL Model Notice and sending a single COBRA notice "written in a manner calculated to be understood by the average plan participant" containing all required by law, to save money Airgas instead opted to break the information into multiple documents, mailed separately under different cover, containing bits and pieces of information on COBRA, both of which are still missing critical information.  In fact, the DOL Model Notice was designed to avoid precisely the issues caused by Airgas's confusing and piecemeal COBRA rights notification process.

4.      The deficient COBRA notices at issue in this lawsuit both confused and misled Plaintiff.  It also caused Plaintiff economic injuries in the form of lost health insurance and unpaid medical bills, as well as informational injuries.

---

indicates that the COBRA population is sicker than active-covered employees and that the 2% administrative fee allowed in the law is insufficient to offset the difference in actual claims costs." Health Insurance Continuation Coverage Under COBRA, Congressional Research Service, Janet Kinzer, July 11, 2013.

5.     Defendant has repeatedly violated ERISA by failing to provide participants and beneficiaries in the Plan with adequate notice, as prescribed by COBRA, of their right to continue their health coverage upon the occurrence of a "qualifying event" as defined by the statute.

6.     Defendant's COBRA notice and process violates the law.  Rather than including all information required by law in a single notice, written in a manner calculated to be understood by the average plan participant, Defendant's COBRA notification process instead offers only part of the legally required information in haphazard and piece-meal fashion.

7.     For example, Defendant's COBRA Enrollment Notice sent to Plaintiff following his termination, violates 29 C.F.R. § 2590.606–4(b)(4)(xii) because it fails to include an address indicating where COBRA payments should be mailed.

8.     Not only that, it violates 29 C.F.R. § 2590.606-4(b)(4)(v) because the COBRA Enrollment Notice *itself* never actually explains how to enroll in COBRA, nor does it bother including a physical election form (both of which the model Department of Labor form includes).  Instead, it merely directs plan participants to a "catch-all" general H.R. phone number to enroll in COBRA, operated by a third-party guised as AIRGAS benefits department, rather than explaining how to actually enroll in COBRA.  The COBRA Enrollment Notice contains no instructions on how to actually enroll if one calls the phone number.  Thus, it defies logic for the same document -- which purports to be a "COBRA Enrollment Notice" -- not to also contain instructions on how to enroll in COBRA.

3

9.     The COBRA Enrollment Notice also violates 29 C.F.R. § 2590.606–4(b)(4)(xii) because it fails to include information on how COBRA coverage can be lost prematurely, including, for example, because of late payments.  Furthermore, The Cobra Enrollment Notice violates 29 C.F.R. § 2590.606-4(b)(4)(vi) because it fails to provide all required explanatory information.

10.    Because The Cobra Enrollment Notice omits the above critical pieces of information, it collectively violates 29 C.F.R. § 2590.606–4(b)(4), which requires the plan administrator of a group-health plan to provide a COBRA notice "written in a manner calculated to be understood by the average plan participant." Without information on *how* to elect COBRA, or *where* to send payments, Defendant's COBRA enrollment notice simply is not written in a manner calculated to be understood by the average plan participant.

11.    To compound the confusion, Defendant sent Plaintiff a second letter containing information on COBRA in a separate document labeled "Important Information About Your COBRA Continuation Coverage."  The two documents were mailed under separate cover, only further adding to the confusion.  And, while the document labeled "Important Information About Your COBRA Continuation Coverage" contains some of the information missing from the COBRA Enrollment Notice, it does not contain all of it.

12.    Additionally, pursuant to the federal government's extension of related COBRA deadlines due to the global COVID-19 pandemic, Defendant included a notice regarding the additional time to enroll in COBRA *and* make the

4

first payment for COBRA. However, Defendant again fails to include the critical information on either how to enroll or where to send payment.

13.   For instance, in its additional notice regarding the pandemic-related extensions, under a column heading, "Actions Needed", Defendant merely tells Plaintiff to visit "your Benefits" website or to call the generic catch-all HR number, even though Defendant simultaneously warns Plaintiff that failure to submit payment may result in retroactive termination of coverage.

14.   As a result of receiving the COBRA enrollment notice, and the subsequent paperwork, Plaintiff failed to understand the notice and, thus, Plaintiff could not make an informed decision about his health insurance and lost health coverage.

15.   Plaintiff suffered a tangible injury in the form of economic loss, specifically the loss of insurance coverage and incurred medical bills, due to Airgas deficient COBRA forms.  In addition to a paycheck, health insurance is one of the most valuable things employees get in exchange for working for an employer like Airgas.  Insurance coverage has a monetary value, the loss of which is a tangible and an economic injury.

16.   Not only did Plaintiff lose his insurance coverage, after Plaintiff lost his insurance he incurred medical bills resulting in further concrete economic injury.

17.   Defendant's above violations also subjected Plaintiff to a risk of real harm to the concrete interest in receiving a notice written in a manner calculated

to be understood by the average plan participant, and to elect COBRA continuation coverage, the very interests that Congress sought to protect with ERISA/COBRA

18.     Finally, Airgas's deficient COBRA notice also caused Plaintiff an informational injury when Airgas failed to provide him with information to which he was entitled to by statute, namely a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).  Through ERISA and then COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).  Airgas injured Plaintiff and the class members he seeks to represent by failing to provide all information in its notice required by COBRA.

19.     As a result of these violations, which threaten Class Members' ability to maintain their health coverage, Plaintiff seeks statutory penalties, injunctive relief, attorneys' fees, costs and expenses, and other appropriate relief as set forth herein and provided by law.

## JURISDICTION, VENUE, AND PARTIES

20.     This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e) and (f), and also pursuant to 28 U.S.C. §§ 1331 and 1355.

21.     Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2).

22.     Plaintiff experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2)

23.     Defendant is a foreign corporation registered to do business in the State of Florida.

24.     Defendant is a Plan Administrator within the meaning of 29 U.S.C. § 1002(16)(A).

## FACTUAL ALLEGATIONS

### *COBRA Notice Requirements*

25.     The COBRA amendments to ERISA included certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event" as defined by the statute.

26.     Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event ... to elect, within the election period, continuation coverage under the plan."  29 U.S.C. § 1161.

27.     Notice is of enormous importance.  The COBRA notification requirement exists because employees are not expected to know instinctively of their right to continue their healthcare coverage.

28.     Moreover, existing case law makes it ostensibly clear that notice is not only required to be delivered to covered employees but to qualifying beneficiaries, as well.

29.     COBRA further requires the administrator of such a group health plan to provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4). This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor.  29 U.S.C. § 1166(a).

30.     To facilitate compliance with notice obligations, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4.  The DOL website states that the DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

31.     In the event that a plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1).  In addition, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).  Such is the case here.  Defendant failed to use the Model Notice and failed to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, as set forth below.

### *Defendant's Notice Is Inadequate and Fails to Comply with COBRA*

32.     Defendant partially adhered to the Model Notice provided by the Secretary of Labor, but only to the extent that served Defendant's best interests, as critical parts are omitted or altered in violation of 29 C.F.R. § 2590.606-4. Among other things:

> **a.     The Cobra Enrollment Notice violates 29 C.F.R. § 2590.606-4(b)(4)(xii) because it fails to provide the address to which payments should be sent;**

> **b.     The Cobra Enrollment Notice violates 29 C.F.R. § 2590.606-4(b)(4)(v) because the notice itself never actually explains how to enroll in COBRA, nor does it bother including a physical election form (both of which the model Department of Labor form includes);**

> **c.     Defendant's COBRA forms violate 29 C.F.R. § 2590.606-4(b)(4)(vi) because it fails to provide all required explanatory information; and**

> **d.     Defendant's COBRA forms violate 29 C.F.R. § 2590.606-4(b)(4) because Defendant has failed to provide a notice written in a manner calculated to be understood by the average plan participant.**

33.     Defendant's COBRA notice confused Plaintiff and resulted in his inability to make an informed decision as to electing COBRA continuation coverage.  In fact, Plaintiff did not understand the notice and, further, Plaintiff was unable to elect COBRA because of the confusing and incomplete Airgas COBRA notice.  For example, the COBRA's notice omission of a payment address left him

9

without information on where to mail payment if elected.  Similarly, The Cobra Enrollment Notice failed to sufficiently explain how to enroll in COBRA.

34.    Defendant's attempt to cure the above deficiencies with a separate COBRA form only adds to the confusion.  As a result, Plaintiff could not make an informed decision about his health insurance and lost health coverage.

### *Named Plaintiff Douglas Schroeder*

35.    Named Plaintiff Douglas Schroeder worked for Defendant for approximately fourteen years.

36.    Plaintiff's employment ended on February 11, 2021, when he was terminated.

37.    As a result of his termination, Plaintiff experienced a qualifying event as defined by 29 U.S.C. § 1163(2).

38.    Following this qualifying event, Defendant caused its COBRA Administrator, Alight Solutions, to mail Plaintiff a deficient COBRA enrollment notice similar to the form mailed to Plaintiff.  Also, Defendant mailed to Plaintiff its "Important Information About Your COBRA Continuation Coverage," containing some – but not all – of the information missing from its COBRA enrollment notice.

39.    The deficient COBRA notice that Plaintiff received was violative of COBRA's mandates for the reasons set forth herein.

40.    Defendant has in place no administrative remedies Plaintiff was required to exhaust prior to bringing suit.

41.    Additionally, because no such administrative remedies exist, any attempt to exhaust the same would have been futile.

42.    Plaintiff Schroeder suffered a tangible injury in the form of lost health insurance coverage because of Defendant's deficient COBRA notice.

43.    Additionally, Plaintiff Schroeder suffered a tangible injury in the form of economic harm when he paid out of pocket for medical and dental expenses.

44.    Not only that, Plaintiff Schroeder suffered injury in the form of stress and anxiety created by the loss of his health insurance coverage because of Defendant's deficient COBRA notice.

45.    Plaintiff Schroeder also suffered a tangible injury in the form of lost prescription benefits because of Defendant's deficient COBRA notice.

46.    Plaintiff Schroeder suffered further tangible injury in the form of lost medical treatment.

47.    Plaintiff Schroeder also suffered a tangible injury because of Defendant's deficient COBRA notice in that he lost control over his own medical treatment, including the ability to continue treating with his prior health care providers and the ability to select his future health care providers.

48.    Finally, Plaintiff Schroeder suffered an informational injury as a result of Defendant's deficient COBRA notice because he was never provided all information to which he was entitled by 29 C.F.R. § 2590.606-4(b).

49.     No administrative remedies exist as a prerequisite to Plaintiff Schroeder's claims on behalf of the Putative Class as he is <u>not</u> making a claim for benefits or payment for benefits under any health plan.

50.     Nor does he challenge the termination of his health benefits after he experienced a qualifying event.

51.     Rather, Plaintiff Schroeder is simply challenging the legal sufficiency of Defendant's post-employment COBRA notices. As such, any efforts related to exhausting under such non-existent remedies are/were futile.

### *Violation of 29 C.F.R. 29 C.F.R. § 2590.606-4(b)(4)(v)*
### *Failure to explain how to enroll in COBRA*

52.     The governing statute clearly requires that "[t]he notice ... shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:...(v) [a]n explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made." 29 C.F.R. § 2590.606-4(b)(4)(v).

53.     As a threshold matter, Defendant's COBRA Enrollment Notice fails to adequately explain the procedures for electing coverage.   The subsequent paperwork also fails to do so.   By failing to explain the procedures for electing coverage, Defendant interfered with Plaintiff's ability to elect COBRA continuation coverage.   And, furthermore, by failing to adequately explain the procedures for

electing coverage, Airgas prevented Plaintiff from understanding his rights under COBRA and how to make an informed decision about continuation coverage.

54.   Instead, Defendant's COBRA enrollment notice merely directs plan participants to a general phone number, rather than explaining how to actually enroll in COBRA.   To further compound the confusion, the Airgas COBRA enrollment notice contains no instructions on how to actually enroll if one calls the phone number.   The telephone number provided by Airgas in its COBRA enrollment notice is a "catch-all" number individuals can call with questions about anything benefit-related, including retirement funds, etc.

55.   This "catch-all" number is actually a phone number to a third-party administrator, Alight Solutions (an entity never identified in the COBRA notice).

56.   A "catch-all" number provided by Defendant and then routed to a third-party call center designed to answer anything HR-related simply cannot meet the strict informational statutory requirements of 29 C.F.R. § 2590.606-4(b)(4)(v) required of all COBRA notices as to enrollment.

57.   Unlike the Airgas COBRA notice, the Model DOL notice provides a near fool-proof way to elect COBRA coverage by providing a physical election form to mail in, the date it is due, the name and address to where election forms should be sent, spaces for the names, social security numbers, and type of coverage elected by each plan participant or beneficiary.

58.   Airgas COBRA enrollment notice simply does not contain "an explanation of the plan's procedures for electing continuation coverage, including

13

an explanation of the time period during which the election must be made, and the date by which the election must be made" as required by 29 C.F.R. § 2590.606-4(b)(4)(v). Merely telling Plaintiff and the putative class members to call a generic 1-800 number operated by a third-party and hope they are able to figure out how to enroll after they call is not what is legally required in a COBRA notice. Instead, the notice itself must contain information on how to enroll. Airgas simply does not.

### Violation of 29 C.F.R. § 2590.606-4(b)(4)(xii)
### Failure to provide the address to which payments should be sent

59.     Defendant is specifically required to include in its notice the address to which payments should be sent. 29 C.F.R. § 2590.606-4(b)(4)(xii). The Cobra Enrollment Notice simply does not include this information.

60.     The COBRA enrollment notice provided to Plaintiff states "Once enrolled, you'll receive your first bill for the cost of continuing coverage from the date your coverage ended through the end of the month in which you make your COBRA/continuation coverage election. You must submit your first payment within 45 days of when you elected COBRA/continuation coverage." Remarkably, however, the notice fails to actually state where payments are to be sent. This is a per se violation of 29 C.F.R. § 2590.606-4(b)(4)(xii), which on its face requires all COBRA notices include "the address to which payments should be sent."

61.     Defendant instead dedicates multiple paragraphs to having the employee and Plaintiff sign up for "Direct Debit" so that Defendant can withdraw

14

monthly payments on its schedule. But nowhere does Defendant provide the address for payment for an employee that chooses not to sign up for Direct Deposit. Defendant states that *only* after Plaintiff enrolls will a bill – which presumably will include the mailing address for payment – be sent to them. Defendant warns, "Whether you receive the bill in advance or not, it is your responsibility to make your first payment within 45 days of when you elected COBRA coverage." Thus, for unemployed former employees, like Plaintiff, that need to maximize the extensions, or maintain control of their finances, the payment address is a critical piece of information that Defendant's notice withholds.

62.    Defendant's attempt to cure this deficiency by providing a mailing address for payment in subsequent paperwork only demonstrates that Defendant knows this information must be disclosed.   But this piecemeal strategy for separating COBRA information does not comport with the law.   Rather, as demonstrated by the Model DOL COBRA notice, which is a single cohesive document, 29 C.F.R. § 2590.606-4(b)(4)(xii) contemplates providing the statutorily required information in "a" COBRA "notice" (singular), rather than in multiple documents which must be read in conjunction with one another for plan participants/beneficiaries to glean the necessary information from.

63.    Without this information, Plaintiff is left ready and willing, but unable, to properly enroll and maintain continuation coverage.

64.    A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed

decision. Without knowing where to send payment, Plaintiff was misled as to how to enroll in COBRA.

65.     Because of the foregoing deficiencies, Defendant's COBRA notice is insufficient. Defendant has misled Plaintiff about the material parameters and procedures surrounding his right to elect COBRA coverage, failing to comply with the requirements made clear by the Code of Federal Regulations.

## *Violation of 29 C.F.R. § 2590.606-4(b)(4)(vi) – Failure to Include Explanatory Information*

66.     The Cobra Enrollment Notice violates 29 C.F.R. § 2590.606-4(b)(4)(vi) because it fails to provide all required explanatory information.

67.     For example, there is simply no explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act.

## *Violation of 29 C.F.R. § 2590.606-4(b)(4) Failure to Provide COBRA Notice Written in a Manner  Calculated "To Be Understood By the Average Plan Participant"*

68.     By failing to adequately explain the procedures for electing coverage, as required by 29 C.F.R. § 2590.606-4(b)(4)(v), coupled with the complete omission from The Cobra Enrollment Notice of how to actually enroll in COBRA, where to send payment, the consequences for untimely payments, failure to include all required explanatory information, and even who the COBRA

16

Administrator is/was, Defendant cumulatively violated 29 C.F.R. § 2590.606-4(b)(4).  This particular section mandates that employers, like Defendant, must provide a notice of continuation coverage written in a manner calculated "to be understood by the average plan participant."  Without the aforementioned critical pieces, Defendant's COBRA notice cannot be said to be written in a manner calculated "to be understood by the average plan participant."  Thus, Defendant violated 29 C.F.R. § 2590.606-4(b)(4)(v).

## CLASS ACTION ALLEGATIONS

69.    Plaintiff brings this action as a class action pursuant to the Federal Rules of Civil Procedure on behalf of the following persons:

> **All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by Defendant, in the form sent to Plaintiff, during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant's records, and did not elect continuation coverage**.

70.    No administrative remedies exist as a prerequisite to Plaintiff's claims on behalf of the Putative Class.   Even if they did, any efforts related to exhausting such non-existent remedies would be futile.

71.    Numerosity: The Class is so numerous that joinder of all Class members is impracticable. On information and belief thousands of individuals satisfy the definition of the Class.

72.    Typicality: Plaintiff's claims are typical of the Class.  The COBRA notice  that Defendant sent to Plaintiff was a form notice that was uniformly

17

provided to all Class members. As such, the COBRA notice that Plaintiff received was typical of the COBRA notices that other Class Members received and suffered from the same deficiencies.

73.     <u>Adequacy:</u> Plaintiff will fairly and adequately protect the interests of the Class members, he has no interests antagonistic to the class, and has retained counsel experienced in complex class action litigation.

74.     <u>Commonality:</u> Common questions of law and fact exist as to all members of  the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a.     Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1);

b.     Whether Defendant's COBRA notice complied with the requirements of 29  U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

c.     Whether statutory penalties should be imposed against Defendant under 29  U.S.C. § 1132(c)(1) for failing to comply with COBRA notice requirements, and if so, in what amount;

d.     The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and

e.     Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with COBRA notice requirements.

75.    Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices and the adequacy of its COBRA notice.   Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

76.    Plaintiff intends to send notice to all Class Members to the extent required the Federal Rules of Civil Procedure.  The names and addresses of the Class Members are available from Defendant's records, as well as from Defendant's third-party administrator, Alight Solutions.

### CLASS CLAIM I FOR RELIEF
***Violation of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4***

77.    The Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

78.    Defendant is the plan sponsor and plan administrator of the Plan and was subject to the continuation of coverage and notice requirements of COBRA.

79.    Plaintiff and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Defendant was aware that they had experienced such a qualifying event.

80.    On account of such qualifying event, Defendant sent Plaintiff and the Class Members a COBRA notice in the forms that did not comply with the law.

81.    The COBRA notice that Defendant sent to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth above (among other reasons).

82.    These violations were material and willful.

83.    Defendant knew that its notice was inconsistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, but chose to use a non-compliant notice in deliberate or reckless disregard of the rights of Plaintiff and other Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, pray for relief as follows:

a.    Designating Plaintiff's counsel as counsel for the Class;

b.    Issuing proper notice to the Class at Defendant's expense;

c.    Declaring that the COBRA notice sent by Defendant to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

d.    Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

e.    Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for each Class Member who was sent a defective COBRA notice by Defendant;

f.    Awarding attorneys' fees, costs and expenses to Plaintiff's counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

g.    Granting such other and further relief, in law or equity, as this Court deems appropriate.

Dated this 7th day of June, 2022.

Respectfully submitted,

_____
**BRANDON J. HILL**
Florida Bar Number: 0037061
**LUIS A. CABASSA, P.A.**
Florida Bar Number: 0053643
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Direct: 813-337-7992
Main: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com